UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RAUL H.,

                    Plaintiff,

          v.                                                **DECISION AND ORDER**

                                                            23-CV-6407S
COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____

     1.     Plaintiff Raul H.[1]  brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his application for supplemental security income under Title XVI of the Act. (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

     2.     Plaintiff protectively filed his application with the Social Security Administration on February 26, 2021.  He alleged disability beginning on February 26, 2020, due to asthma, chronic obstructive pulmonary disease ("COPD"), major depressive disorder, hypertension, cannabis use disorder, and alcohol use disorder.  His application was denied and he thereafter requested a hearing before an administrative law judge ("ALJ").

     3.     On June 6, 2022, ALJ Louis Bonsangue held a hearing at which Plaintiff was represented by counsel and Vocational Expert Whitney Ayer appeared and testified.

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

(R.[2] at 17, 33-63.)  At the time of the hearing, Plaintiff was a 49-year-old man with a high school education but no past relevant work experience.  (R. at 19, 26.)

4.     The ALJ considered the case *de novo* and, on September 28, 2022, issued a written decision denying Plaintiff's application for benefits.  (R. at 17.)  After the Appeals Council denied Plaintiff's request to review the ALJ's decision, he filed the current action challenging the Commissioner's final decision.[3]  (Docket No. 1.)

5.     Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 6, 13.)   Plaintiff filed his Reply on January 30, 2024 (Docket No. 14), stating that no formal reply was needed (id. at 1).  This Court then took the Motions under advisement without oral argument.  For the reasons that follow, Plaintiff's Motion will be denied and Defendant's Motion will be granted.

6.     A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 26 L. Ed. 2d 842 (1971).  Where evidence is

---

[2] Citations to the underlying administrative record are designated as "R."

[3] The ALJ's September 28, 2022, decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review.

deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7.     "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. § 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).

9.     The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based

> solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original);

see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10.     At Step Two, an impairment is deemed "severe" if it significantly limits a claimant's ability to perform basic work activities. 20 C.F.R. § 416.920(c). A severe impairment is "'any impairment or combination of impairments which significantly limits [the claimant's] ability to do basic work.'" Miller v. Berryhill, No. 16CV6467, 2017 U.S. Dist. LEXIS 153578, at *20 (W.D.N.Y. Sept. 20, 2017); see 20 C.F.R. § 416.920(c). An impairment or combination of impairments is found to be "not severe" when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work. See SSR 85-28, 1985 SSR LEXIS 19 (1985); 20 C.F.R. § 416.922; Donahue v. Colvin, No. 6:17-CV-06838 (MAT), 2018 WL 2354986, at *5 (W.D.N.Y. May 24, 2018).

11.     At this Step, the claimant bears the burden of establishing the severity of his impairment. But this severity requirement is de minimis "and is meant only to screen out the weakest of claims." Herman S. v. Comm'r, 577 F. Supp. 3d 190, 195 (W.D.N.Y. 2022); see also Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995).

4

12.     Despite this <u>de minimis</u> screening standard at Step Two, a claimant's mental impairments are evaluated under a special technique applying the "paragraph B" criteria to determine whether they were medically determinable mental impairments and establish the degree of functional limitation resulting therefrom in four broad functional areas such as the claimant's understanding, remembering, or applying information; interaction with others; concentration, persistence, or maintenance of pace; and adapting or managing oneself.  20 C.F.R. § 416.920a(c)(3); <u>see</u> <u>Melendez v. Comm'r</u>, No. 17-CV-299-FPG, 2020 WL 4274510, at *2 (W.D.N.Y. July 24, 2020).

13.     Further, while one may differ on the assessment of evaluation of claimant's "paragraph B" criteria, this Court must affirm the ALJ's findings that undergird the severity finding where that evaluation is supported by substantial evidence.  <u>See</u> <u>Brault v. Social Sec. Admin., Comm'r</u>, 683 F.3d 443, 448 (2d Cir. 2012); <u>Biestek v. Berryhill</u>, 587 U.S. 97, 102-03, 139 S. Ct. 1148, 203 L. Ed. 2d 504 (2019).

14.     Although the claimant bears the burden of proof at the first four steps, this burden shifts to the Commissioner at the fifth and final step.  <u>See</u> <u>Yuckert</u>, 482 U.S. at 146 n.5; <u>Ferraris v. Heckler</u>, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  <u>See</u> 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(f); <u>see also</u> <u>Heckler v. Campbell</u>, 461 U.S. 458, 460, 103 S. Ct. 1952, 76 L. Ed. 2d 66 (1983).

15.     The ALJ analyzed Plaintiff's claim for benefits under the five-step process set forth above.  At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date.  (R. at 19.)

16.     At Step Two, the ALJ found that Plaintiff had the following severe impairments:  asthma and COPD.  (R. at 19.)

17.     Among Plaintiff's other claimed impairments and pertinent to Plaintiff's present motion, the ALJ found that his asserted major depressive disorder was not severe.  (R. at 19-20.)  In reaching this finding, the ALJ considered "paragraph B" criteria finding that Plaintiff had no limitation in understanding, remembering, or applying information and mild limitations in the other functional areas of interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  (R. at 21.)

18.     Specifically, as for the functional area of understanding, remembering, and applying information, the ALJ observed that the record showed that Plaintiff presented as alert and oriented, with rational thought process, appropriate thought content, good memory, and good cognition, with the ability to read, play videogames, cook, clean, and manage his money.  (R. at 21; see R. at 363, 404, 417, 446, 466.)  The ALJ thus concluded that Plaintiff had no limitation for this functional area.  (R. at 21.)

19.     As for Plaintiff's ability to interact with others, the ALJ stated that the evidence showed that Plaintiff was generally cooperative, with calm behavior and euthymic mood, appropriate affect, appropriate dress, eye contact and fluency.  The ALJ also noted that Plaintiff was able to take public transportation and had a good relationship

with his child.  (R. at 21; <u>see</u> R. at 363, 403, 412, 446.)  The ALJ thus found that Plaintiff had mild limitation in this functional area.

20.     As for the functional area of concentration, persistence, or maintenance of pace, the ALJ found Plaintiff was alert, oriented, coherent, and had goal-directed thought process, intact attention and concentration, concluding that Plaintiff's limitation under this functional area was mild.  (R. at 21; <u>see</u> R. at 417, 445, 466.)

21.     Finally, as for the functional area of adapting or managing oneself, the ALJ found that Plaintiff denied suicidal or homicidal ideations while having good insight and judgment and with the ability to engage in activities of daily living.  (R. at 21; <u>see</u> R. at 445, 465, 583.)  The ALJ accepted as persuasive the opinion of the consultative opinion of Adam Brownfeld, Ph.D., who found that Plaintiff could bathe, dress, groom himself, manage his money, shop, and take public transportation.  (R. at 21, 25, 448.)  Therefore, the ALJ concluded that Plaintiff had a mild limitation in this functional area.

22.     With these findings of either mild or no limitations, the ALJ found that Plaintiff's major depressive disorder did not cause more than minimal limitation in Plaintiff's ability to perform work, hence concluding it was a non-severe impairment.  (R. at 19-21.)

23.     At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 22.)

24.     Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels subject to some non-exertional limitations, namely that Plaintiff should avoid even moderate exposure to

extreme cold, extreme heat, humidity, fumes, dust, odors, gases, and poor ventilation. (Id.)

25.     At Step Four, the ALJ found that Plaintiff had no past relevant work.  (R. at 26.)  At Step Five, the ALJ found that there are jobs that existed in significant numbers in the national economy that Plaintiff could perform.  (R. at 26-27.)  The ALJ determined this by posing hypotheticals to the Vocational Expert whether there existed jobs in the national economy that a claimant of Plaintiff's age, education, work experience, and RFC could perform.  The Vocational Expert opined that such a hypothetical claimant could perform such representative jobs as a marker, labeler, and linen grader.  (R. at 27.)  Accordingly, the ALJ found that Plaintiff was not disabled.  (R. at 27.)

26.     Plaintiff now argues that the ALJ erred at Step Two by not deeming as a severe impairment his major depressive disorder and in finding his "paragraph B" criteria. Alternatively, Plaintiff argues that the ALJ failed to incorporate his deemed nonsevere mental limitations in assessing the RFC.

27.     For the reasons that follow, this Court concludes that these arguments are unavailing.   While Plaintiff met his de minimis burden asserting severe mental impairments, he has not established that he suffered more severe mental impairments than indicated by the "paragraph B" functional areas.

28.     Reviewing relevant portions of Plaintiff's medical record for the severity of his mental impairment, this Court finds that on his July 16, 2020, treatment session with Jera Delibashi, PA, of Rochester Regional Health, Plaintiff denied having symptoms of depression and anxiety and reported that his mood was good.  (R. at 415-17.)

29.     In 2021, Plaintiff continued mental health treatment at Rochester Regional Health.  On May 26, 2021, he reported that his mood was down and that he was under a lot of stress.  (R. at 465, 466.)  Plaintiff reported to St. Mary's Hospital that he had a down mood for about one to two years, worsening the week prior to his visit.  He felt significantly stressed due to childcare obligations and being fatigued.  (R. at 464-65.)  He commenced medication and was referred to counseling.  (R. at 466, 482, 484.)  While finding Plaintiff's mood was depressed, PA Delibashi noted that his affect, speech, behavior, thought content, cognition, and memory were normal.  (R. at 466.)  Plaintiff was prescribed Lexapro and counseling.  (R. at 466-67.)

30.     On June 29, 2021, Plaintiff returned to Rochester Regional Health for a refill of Lexapro.  Although he noted improvement in his symptoms, Plaintiff reported suffering from increased anxiety, loss of energy, poor concentration, and agitation.  (R. at 482.)  Lavanya Ravindran, M.D., examined Plaintiff at Rochester Regional Health and found he still had normal mood, affect, thought content, and judgment.  (R. at 483.)  The doctor diagnosed Plaintiff with a moderate single episode of major depressive disorder, improving but not optimal and doubled his dosage of Lexapro.  (R. at 484.)

31.     On February 28, 2022, Plaintiff reported to the Huther Doyle treatment center complaining of symptoms of depression and anxiety with substance use.  (R. at 562.)  Plaintiff stated that he no longer wished to be isolated and wanted to improve his relationships.  Yisenia Rivera, intake counselor at Huther Doyle, found that Plaintiff had a normal mood, affect, speech, thought processes, attention span, judgment, and insight.  (R. at 582-83.)

32.     On March 2, 2022, the Finger Lakes Area Counseling & Recovery Agency ("FLACRA") evaluated Plaintiff where it was noted that his family believed that something was wrong with Plaintiff but he did not see it himself.  (R. at 526.)  On May 19, 2022, Plaintiff returned to FLACRA and reported that he had "dark times" but did not feel that he was depressed.  (R. at 534.)  He sought treatment because family members thought he was too isolated.  (R. at 534, 541.)  FLACRA's mental health therapist Leah Mead examined Plaintiff and found that he had a normal mood, affect, speech, thought processes, attention span, judgment, and insight.  (R. at 531.)

33.     The ALJ reviewed this record and found that Plaintiff experienced some symptoms of depression combined with use of substances, but Plaintiff had a limited history of mental health treatment with his mental status examinations "generally remained intact."  (R. at 20-21.)  Further, the ALJ noted that Plaintiff engaged in activities of daily living and began treatment with medication with good benefit.  Thus, the ALJ concluded that Plaintiff's mental impairment was not severe.  (R. at 21, 22.)

34.     Plaintiff now argues that the ALJ erred in finding his mental impairments non-severe and in not including them in his RFC.  Plaintiff contends that the ALJ should have made a more detailed assessment of his mental health than was afforded.  He argues that this assessment also errs because it did not properly evaluate the "paragraph B" criteria.  He contends that this assessment also downplays the opinion of Dr. Brownfeld which noted Plaintiff's short-term memory and concentration difficulties as well as Plaintiff's subjective statements to treating sources that he isolated himself and had concentration problems.

35.     This Court finds that the evidence of the course of Plaintiff's treatment provides <u>de minimis</u> proof of a severe mental impairment.  The ALJ, however, assessed in detail Plaintiff's mental health by properly applying the "paragraph B" criteria. Furthermore, this assessment is supported by the record where Plaintiff's medical record as well as Dr. Brownfeld's evaluation (R. at 446-48) reveal normal mental status examination results with only episodic depression that was treated with medication.

36.     Where the ALJ finds a rating of none or mild limitation for the four functional areas under "paragraph B," the ALJ generally concludes that claimant's mental impairment is not severe.  <u>See</u> 20 C.F.R. § 416.920a(d)(1).  Despite Plaintiff meeting the <u>de minimis</u> burden of proof for his mental limitations, this Court concludes that the ALJ appropriately relied on Plaintiff's treatment notes and consultative evaluations as opposed to Plaintiff's subjective complaints to conclude on the "paragraph B" functional areas that at most Plaintiff's had mild mental health limitations from his major depressive disorder. (<u>See</u> R. at 21-22.)

37.     Plaintiff identified instances in this record for more severe impairment findings for these four categories.   But these instances, including those noted in Dr. Brownfeld's examination, are based on Plaintiff's subjective complaints.  (R. at 446.) Even with these subjective complaints, Dr. Brownfeld found that there was no evidence of limitation in Plaintiff's understanding, remembering, or applying directions and instructions or in sustaining concentration, interacting with the public, and maintaining personal hygiene.  (R. at 448.)  Plaintiff also cites his examination on June 29, 2021, in support of his argument when he reported to Rochester Regional Health for poor concentration and agitation despite improvement with medication but this also consists of

11

his subjective complaints.  (R. at 482.)  Plaintiff otherwise has not pointed to any other evidence, particularly objective evidence, of the severity of his mental impairments contained in the record to refute the ALJ's "paragraph B" special technique analysis.

38.     This Court finds that the ALJ properly applied the special technique regulations for evaluation of Plaintiff's mental impairments.  From Plaintiff's normal mental health status evaluations and despite his subjective complaints, the ALJ had sufficient evidence to show the diminished degree of severity for Plaintiff's depression.   Thus, Plaintiff's Motion for Judgment on the Pleadings on this issue is denied.

39.     Notwithstanding the non-severity of his mental impairment, Plaintiff alternatively argues that the ALJ failed to include any limitations for his depression in the RFC.

40.     Under the Social Security regulations, the ALJ is required to consider all impairments, including those determined not to be severe.  20 C.F.R. § 416.945(a)(2). The RFC "must account for limitations imposed by both severe and nonsevere impairments."  Parker-Grose v. Astrue, 462 F. App'x 16, 18 (2d Cir. 2012).

41.     Unlike the failure of the ALJ in David Q. v. Comm'r, No. 20-CV-1207MWP, 2022 WL 806628, at *4-5 (W.D.N.Y. Mar. 17, 2022)[4], to consider any functional limitation associated with that claimant's major depressive disorder in his RFC assessment, this Court finds here that the ALJ did in fact consider Plaintiff's mental limitations in the subsequent steps of the sequential analysis and upon substantial evidence concluded that they were not severe.  The ALJ relied on the May and June 2021 opinions of state agency psychological consultants M. D'Ontona, Psy.D., and L. Haus, Psy.D.  (R. at 25.)

---

[4]A case relied on by Plaintiff, Docket No. 6, Pl. Memo. at 11.

These consultants both found that Plaintiff's mental impairments were non-severe and caused no more than mild limitation in his mental functioning while noting no history of mental health treatment, normal attention, concentration, and memory.  (R. at 71, 82, 83-84, 457, 475-76.)  The ALJ found that these opinions were consistent with the medical record.  The ALJ also rested on Plaintiff's statements of the activities of daily living (cooking, cleaning, washing laundry, shopping, and maintaining personal care) he could perform.  (R. at 25.)

42.     The ALJ noted the record after these state agency evaluations of May-June 2021 showed that Plaintiff experienced depression that was treated with medication and some noted improvement.  (R. at 25; see R. at 461, 477-86, 517.)  Plaintiff also had what the ALJ termed "intact mental status."  (R. at 25, 525-34, 546-84.)

43.     The ALJ also relied on the findings (if not his conclusions) from Dr. Brownfeld's opinion, and Plaintiff's medical record in finding that Plaintiff could perform a full range of work without any mental limitations where this record documented "some limitations due to [Plaintiff's] impairments, it does not document some of the more significant limitations alleged."  (R. at 25.)  As a result, the ALJ concluded that Plaintiff's mental limitations were not severe.  (R. at 26.)  The ALJ thus considered Plaintiff's mental limitations throughout the sequential analysis.   Plaintiff's objection to the contrary is rejected.

44.     Therefore, Plaintiff's Motion for Judgment on the Pleadings on this ground is denied.

45.     Accordingly, having reviewed the ALJ's decision and considered Plaintiff's argument, this Court finds that the ALJ appropriately applied the special technique for

evaluation of mental impairments, assessed Plaintiff's functional limitations, and concluded that Plaintiff's mental limitations were not severe. Furthermore, this Court finds that the ALJ considered these non-severe mental limitations in subsequent steps in the disability analysis and had substantial evidence to conclude that these limitations should not alter the RFC.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 6) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 13) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:        August 26, 2024
              Buffalo, New York


                                              s/William M. Skretny
                                          WILLIAM M. SKRETNY
                                          United States District Judge